UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  18-CV-81735-CIV-DIMITROULEAS

DAVID GORDON OPPENHEIMER,

    Plaintiff,

v.

FIVE LINX, LLC,

    Defendant.

_____

## MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

Pursuant to Rule 55(b) and 58(d) of the Federal Rules of Civil Procedure, Plaintiff David Gordon Oppenheimer, by and through his undersigned counsel, respectfully moves the Court for an entry of default judgment in favor of Plaintiff and against Defendant Five Linx, LLC ("Five Linx"). Default has been entered against Five Linx by the Clerk of Court for failure to answer or otherwise defend the instant suit on March 1, 2019 [D.E. 8].  Plaintiff requests that the Court award all relief requested herein against Five Linx, and in support states as follows:

    a.  INTRODUCTION

Plaintiff initiated this action against Defendant Five Linx for willful copyright infringement and removal of copyright management information.  Five Linx is in default and the requirements for a default judgment have been met.  Based upon the declarations of David Gordon Oppenheimer ("Oppenheimer Decl.") and Joel B. Rothman, Plaintiff seeks entry of default judgment for Plaintiff's claim of copyright infringement against Five Linx, an award of damages pursuant to 17 U.S.C. § 504, an award of damages pursuant to 17 U.S.C. § 1203, an award of Plaintiffs costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505, prejudgment

interest, and an injunction pursuant to 17 U.S.C. § 502 permanently enjoining Five Linx from further infringement.

### b. STATEMENT OF FACTS

#### 1. Plaintiff's Rights

David Gordon Oppenheimer is an experienced professional photographer who is based in North Carolina and who creates photographs throughout the United States. [D.E. 1 at ¶ 2; Oppenheimer Decl. at ¶ 2]. Oppenheimer owns all rights, including copyrights, in the photographic image asserted in this action referred to herein as the "Work". [D.E. 1 at ¶¶ 10, 12, 17; Oppenheimer Decl. at ¶ 4-5]. On November 15, 2011, Oppenheimer obtained a registration with the United States Copyright Office for the Work. [D.E. 1 at ¶ 12 & Exhibit 1; Oppenheimer Decl. at ¶ 4 & Exhibit 1].

#### 2. Infringement by Five Linx[1]

Five Linx is a Florida limited liability company that is a multi-level marketing company that offers home and business services and nutritional supplements. [D.E. 1 at ¶ 3, Exhibit 2; Oppenheimer Decl. at ¶ 10 & Exhibit 2]. Five Linx hosts national training events across the country to promote its business. [D.E. 1 at ¶ 3, Exhibit 5; Oppenheimer Decl. at ¶ 9 & Exhibit 2]. Five Linx has never been licensed to use the Work at issue in this action for any purpose. [D.E. 1 at ¶ 18; Oppenheimer Decl. at ¶¶ 10-11 and Exhibit 2].

In or around 2014, Five Linx copied the Work without permission. [D.E. 1 at ¶¶ 18, 19, 21, 22; Oppenheimer Decl. at ¶¶ 11, 15]. After Five Linx copied the Work, it made further copies and distributed the Work at least as shown in Exhibit 5 of the Complaint and Exhibit 2 of the Oppenheimer Decl. when it published the Work on the Internet in order to promote the

---

[1] The following facts are as alleged by Plaintiff, admitted by default, and established by the evidence submitted with the Complaint.

"5Linx International Event" at the Boardwalk Hall in Atlantic City, New Jersey. [D.E. 1 at ¶¶ 4, 23, 24 and Exhibit 5; Oppenheimer Decl. at ¶¶ 11-15 and Exhibit 2]. Five Linx copied and distributed Oppenheimer's copyrighted Work in connection with Five Linx's business for purposes of advertising and promoting its business, and in the course and scope of advertising and selling products and services. [D.E. 1 at ¶¶ 23, 24 & Exhibit 5; Oppenheimer Decl. at ¶¶ 10, 11, 13 & Exhibit 2].

Five Linx has not compensated Plaintiff for its otherwise infringing use of the copyrighted Work. As such, Five Linx's refusal to pay for its commercial use of the Work evidences that Five Linx's infringement was willful and intentional throughout and it always intended to profit from Plaintiff's Work without paying any fees for its use.

### 3. Removal of Copyright Management Information

Plaintiff included a watermark on the face of his Work reading "© 2011 David Oppenheimer Performance Impressions All Rights Reserved". [D.E. 1 at ¶¶ 10, 11, 14, 15 and Exhibits 2, 3; Oppenheimer Decl. at ¶12]. Additionally, Plaintiff displayed the work alongside copyright management information clearly informing others that he owns all rights in the Work. [D.E. 1 at ¶¶ 14, 15 and Exhibits 2, 3; Oppenheimer Decl. at ¶12]. Additionally, Plaintiff included metadata within the digital file of his Work that clearly states that Plaintiff is the owner of all rights in the Work and that any use without a license is strictly prohibited. [D.E. 1 at ¶ 15 and Exhibit 4; Oppenheimer Decl. at ¶12]. Five Linx intentionally removed the watermark and metadata from the Work. [D.E. 1 at ¶¶ 29, 30, 39-44 and Exhibits 2, 3, 4, 5; Oppenheimer Decl. at ¶¶ 12, 22]. Additionally, Five Linx plastered the image with its own branding in order to affiliate the image with Five Linx. [D.E. 1 Exhibit 5; Oppenheimer Decl. at ¶¶ 12, 13, 22, 24]. Specifically, Five Linx affixed its logo to the top left corner of the Work. [D.E. 1 Exhibits 5;

Oppenheimer Decl. at ¶13 and Exhibit 2]. Five Linx prominently included the text "1DAY #5LINXAC" at the bottom half of the Work. [D.E. 1 Exhibit 5; Oppenheimer Decl. at ¶13 and Exhibit 2]. Further, Five Linx included the text "Boardwalk Hall" in the bottom right corner of the image". [D.E. 1 Exhibit 5; Oppenheimer Decl. at ¶13 and Exhibit 2]. Plaintiff has been harmed by the removal of his copyright management information. [D.E. 1 at ¶¶ 43-44 and Exhibits 2, 3, 4; Oppenheimer Decl. at ¶¶ 22, 24, 25].

### 4. Procedural History

On December 19, 2018, Plaintiff filed his Complaint instituting this action against the Defendant. [D.E. 1]. On February 6, 2019, Five Linx was served with a copy of Plaintiff's Complaint and Summons. [D.E. 6]. Five Linx has not filed a pleading in response to Plaintiff's Complaint, nor has it taken any action that otherwise indicates its intent to defend the suit. On March 1, 2019 the Clerk entered default against Five Linx. [D.E. 8].

### c. LEGAL STANDARD FOR DEFAULT JUDGMENT

Once a default is entered by the Clerk of Court, a plaintiff may seek entry of a Default Judgment by the Court against the defaulting defendant pursuant to Federal Rule of Civil Procedure 55.[2] "A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F. 3d 1298,

---

[2] Fed. R. Civ. P. 55 (b)(2): In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
(A) conduct an accounting;
(B) determine the amount of damages;
(C) establish the truth of any allegation by evidence; or
(D) investigate any other matter.

1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. V. Houston Nat'l Bank*, 515 F. 2d 1200, 1206(5th Cir. 1975)); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

Following the entry of a default judgment, damages may be awarded "without a hearing [if] the amount claimed is a liquidated sum or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543-44 (11th Cir. 1985). "Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Id.* at 1544.

Plaintiff received an entry of default pursuant to Rule 55(a) on January 29, 2018. [D.E. 11]. Plaintiff now seeks a final default judgment under Rule 55(b).

### d. ARGUMENT

#### 1. Plaintiff Has Established Five Linx's Liability for Copyright Infringement.

The Copyright Act, 17 U.S.C. § 501(a), provides that "(a)nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). Liability for copyright infringement occurs when a Plaintiff can prove (1) Plaintiff's ownership of a copyright, and (2) defendant's copying of the Work. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).

##### i. *Oppenheimer Owns a Valid Copyright for the Works*

Oppenheimer's Work is an original and expressive pictorial work that may be copyrighted pursuant to 17 U.S.C. § 102(a)(5). Plaintiff may satisfy the first prong by producing a certificate of registration, then the burden shifts to the defendant to demonstrate why the claim of copyright is invalid. *See Feist Publications*, 499 U.S. 340 (noting a "certificate of registration

made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate").

Oppenheimer registered the Works pursuant to 17 U.S.C. § 411(a) and was given a Certificate of Registration, Registration Number VAu 1-084-329, as of November 15, 2011. [D.E. 1 at ¶ 12 & Exhibit 1; Oppenheimer Decl. at ¶ 4 & Exhibit 1]. The certificate was registered within five years of first publication of the Works therefore Oppenheimer is entitled to the presumption of validity of the copyright for the Works and all facts stated in the copyright certificate under 17 U.S.C. § 401(c).

    *ii.*    ***Five Linx Copied the Works***

The copying element of an infringement claim has two components. *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1232 (11th Cir. 2010). First, a plaintiff must demonstrate that the defendant copied the plaintiff's work as a factual matter. *Id.* Second, the plaintiff must establish "substantial similarity" between the allegedly infringing work and the elements of the copyrighted work that are legally protected. *Id.* at 1233.

Here, Plaintiff has produced documents showing Defendant's copying [D.E. 1 at Exhibits 2, 3, 5; Oppenheimer Decl. at Exhibit 2] and Defendant has been found in default by the Clerk of the Court. [D.E. 8]. The produced documents show that Five Linx copied Oppenheimer's Work in at least the manner shown in Exhibit 5 of the Complaint when it posted the Work in order to market and promote the "5Linx International Event" at the Boardwalk Hall in Atlantic City, New Jersey. [D.E. 1 at ¶¶ 4, 23, 24 and Exhibit 5; Oppenheimer Decl. at ¶¶ 11, 13 & Exhibit 2]. There is no factual or subjective issue of "substantial similarity" here, because the Works in question are whole photographs and the copies made by Five Linx were exact copies and the entire image was taken, with the exception of plaintiff's watermark, which was cropped from the

**SRIPLAW**
21301 POWERLINE ROAD, SUITE 100, BOCA RATON, FL 33433

Work. [*Id.*]. Thus, Five Linx undisputedly copied Oppenheimer's copyrighted Works and a Final Default Judgment should be entered against Five Linx.

### 2. Plaintiff Has Established that Five Linx's Infringement Was Willful.

Willful infringement occurs "when the infringer acted with 'actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" *Arista Records, Inc. v. Beker Enterprises. Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). "Moreover, this Court may infer that Defendant willfully infringed Plaintiffs' copyrights because of Defendants' default." *Arista Records, Inc. v. Beker Enterprises. Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (internal citations omitted); *Davis v. Gap, Inc.,* 246 F.3d 152, 155 (2d Cir. N.Y. 2001) (finding defendant's own default as evidence of willfulness and holding that the "purpose of punitive damages--to punish and prevent malicious conduct--is generally achieved under the Copyright Act through the provisions of 17 U.S.C.S. § 504(c)(2), which allow increases to an award of statutory damages in cases of willful infringement"). [3]

Given Five Linx's reproduction, distribution, and public display of the copyrighted Work without obtaining, or even seeking, permission from Plaintiff as copyright owner and refusal to pay a licensing fee to compensate Plaintiff for Defendant's use of the Work, demonstrates that Five Linx had actual knowledge, or at least acted with reckless disregard, of the fact that its conduct infringed upon Plaintiffs exclusive copyrights in the copyrighted Work.

Additionally, defendant has continued to infringe plaintiff's Work, despite being requested by Plaintiff to cease and desist all use. [Oppenheimer Decl. at ¶ 15 and Exhibit 3].

---

[3] The Eleventh Circuit has acknowledged the persuasive authority of the United States District Court for the Southern District of New York's copyright decisions because that court "has developed substantial expertise in copyright law as a result of the large number of copyright cases litigated in that district each year." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1234 n.7 (11th Cir. 2010).

Accordingly, Five Linx's default and the well-pled facts of the Complaint, which are admitted by Five Linx's default, establish that Five Linx's infringement of Plaintiff's Work was willful and deliberate.

### 3. Detailed Affidavits Establish the Amount of Damages and Other Relief Requested.

In addition to the entry of default judgment against Five Linx, Plaintiff requests the following relief and any other relief as the court deem just and proper.

#### i. *Actual Damages Are Appropriate But Insufficient for Willful Copyright Infringement*

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."

Actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright." *Lorentz v. Sunshine Health Prods.,* No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010).

The copyright owns may also recover the fair market value of the licensing fee that would have been charged for the work that was infringed. *Id*. at 15. To demonstrate entitlement to a reasonable license fee, the fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work." *Thornton v. J. Jargon Co*., 580 F. Supp. 2d 1261 (M.D. Fla. 2008) (citing *Montgomery v. Noga*, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999)).

As evidence of the fee that Plaintiff would have charged Defendant for the uses at issue herein, Plaintiff submits the Declaration of David Oppenheimer ("Oppenheimer Decl.").

Specifically, if Five Linx had requested a license to reproduce and display the copyrighted Work on social media for a period of five years, he would have charged $9,200. [Oppenheimer Decl. at ¶ 17].

Oppenheimer further declared that the licensing fees alone do not take into contemplation the scarcity of the photographs, which also increases their value in this case. Scarce images typically demand a much higher fee than common images, and in this case, Oppenheimer obtained special access as a credentialed photographer for the band Furthur, personally vetted by the band's management, and traversed the arena out of the "pit" where the other photographers worked and moved to the far back center of the auditorium in order to capture the unique Work. [Oppenheimer Decl. at ¶¶ 8, 19]. The precise positioning of the photographer, camera angle, lighting balance and timing of the lighting were carefully crafted by Plaintiff. [Oppenheimer Decl. at ¶¶ 8, 19]. Significant technical attributes were required to make the Work including; monitoring the movement and changing color of the stage lights; monitoring the movement of the audience; location scouting to identify the optimal location for the Work; and using advanced photo techniques, both in-camera and via post-production software, to ensure a common brightness, contract, clarity, color temperature, color saturation, color tonality, and image noise reduction. [Oppenheimer Decl. at ¶¶ 8, 19]. Additionally, the Work was created using a camera system valued at several thousand dollars. [Oppenheimer Decl. at ¶ 6].

Furthermore, the Work has lost significant value to its scarcity by the continuing dissemination and association of the image with Five Linx. [Oppenheimer Decl. at ¶ 24]. Accordingly, Oppenheimer believes his actual damages to be $46,000, after considering a scarcity multiplier of five to the licensing fees of $9,200 for Five Linx's five years of use. [Oppenheimer Decl. at ¶ 20]. *See Leonard v. Stemtech Int'l, Inc.,* 834 F.3d 376, 394 (3d Cir.

2016) (affirming a jury verdict of $1.6 million where the sum included a three to five times the benchmark because of the scarcity factor).

Because Five Linx refused to participate in discovery or otherwise defend this matter, Plaintiff is without information to identify how long it used his Work for its own commercial purposes. Plaintiff's actual damages may be a multiple of his annual license fee, but Five Linx through its inaction, suppressed the information necessary to identify the correct figure. As such, plaintiff's license fee is calculated with a term of five years, which is plaintiff's understanding of how long the image was displayed by Five Linx. [Oppenheimer Decl. ¶¶ 15, 17].

Similarly, Five Linx's refusal to cooperate in discovery has prevented Plaintiff from identifying the amount of profits related to its infringing uses of Plaintiff's Work that are recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Five Linx's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work". 17 U.S.C. § 504(b). Five Linx solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court. Notwithstanding, according to Inc. 5000, in 2014, which is the believed date of infringement, Five Linx ranked number 2916 on the Inc. 5000 list and had a reported revenue of $112,400,000. [Oppenheimer Decl. ¶ 20 and Exhibit 4].

With the evidence Mr. Oppenheimer has provided, Plaintiff has demonstrated actual damages of at least $46,000 plus profits attributable to the infringement from $112,400,000 in total revenue. [Oppenheimer Decl. ¶ 20 and Exhibit 4].

### ii.  *Statutory Damages Are Appropriate for Willful Copyright Infringement*

Pursuant to 17 U.S.C. § 504(c), Plaintiff may elect to recover statutory damages for Five Linx's infringement of Plaintiff's exclusive rights in the copyrighted Work, and enhancement of its statutory award based upon the willfulness of such infringement.  Specifically, pursuant to 17 U.S.C. § 504(c)(2), the Court in its discretion may increase an award for statutory damages up to $150,000.00 when infringement was committed willfully. In awarding enhanced damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Communication Corp. v. Network Productions*, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted). Specifically, when an infringing party does not provide expenses saved and profits reaped by the infringing party, the court will instead only look to the actual damages and willful conduct and award an amount of two to three times actual damages to fully compensate Plaintiff and adequately deter future conduct like that of the Defendant.  See *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 481 (S.D. Ga. 1994) (plaintiffs' request of statutory damages of an amount approximately three times what the Defendant would have paid to be licensed is a modest, just and appropriate award under section 504(c)"); See also *Barnstormers, Inc. v. Wing Walkers, LLC*, 2011 U.S. Dist. LEXIS 47143 *15 (W.D. Tex. May 3, 2011) ("in light of Plaintiff's $6,000 in actual damages and Defendants' willful conduct, the Court finds a just award of statutory damages to be three times Plaintiff's actual damages, or $18,000"); *Cynthia Hunt Prods. Ltd. V. Evolution of Fitness Houston Inc.*, 2007 U.S. Dist. LEXIS 77630 *6 (S.D. Tex. Oct. 18, 2007).  Here, the actual damages in the amount of $46,000 multiplied by two is the sum of $92,000, and when multiplied by three comes to the total of $138,000.

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed hereinabove, Five Linx's conduct, as well as its decision not to defend against Plaintiff's claim, and its continued post-notice use of the Work, all demonstrate that its conduct is willful.

Given the circumstances of the instant case, Plaintiff submits that an appropriate award of statutory damages under 17 U.S.C. § 504(c)(2) is at least $138,000 and up to $150,000, in order to accomplish full compensation to the Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages and to deter future violations of copyright law.

    iii.    ***Statutory Damages Are Appropriate for Removal of Copyright Management Information***

At any time before final judgment is entered, a party may elect to recover an award for statutory damages <u>for each violation</u> of 17 U.S.C. § 1202 in the sum of not less than $2,500 or more than $25,000.  17 U.S.C. § 1203(c)(3).  Here, Plaintiff has produced affidavit evidence demonstrating the loss in value of his copyright and the potential of the Works becoming an orphan works due to removal of copyright management information. [Oppenheimer Decl. at ¶¶ 20, 22-25].

The removal of Oppenheimer's copyright management information interfered with Oppenheimer's actual and prospective relationships with clients who might otherwise compensate Oppenheimer for the licensed use of his image. [Oppenheimer Decl. at ¶¶ 22-25]. The removal of Oppenheimer's copyright management information prevents him from granting any broadly exclusive license in the Work to a third party, and even if a third party does not require an exclusive

license, few such clients would consider licensing Oppenheimer's image for use in connection with services similar to those provided by the defendant. [Oppenheimer Decl. at ¶¶ 22-25]. The removal of Oppenheimer's copyright management information eliminated his right and ability to control the use and transmission of the Works and made it vulnerable to becoming an orphan work. [Oppenheimer Decl. at ¶ 25].

Five Linx removed Oppenheimer's copyright management information and posted the unauthorized Work on the internet. [D.E. 1 at Exhibit 2; Myeress Decl. at Exhibit 2]. On final default judgement, this Court has awarded the maximum statutory damages on the basis § 1202 violations. *See Stockwire Research Grp., Inc,* 577 F. Supp. 2d at 1267 (awarding $75,000 to the plaintiff for three § 1202 violations).

Accordingly, Plaintiff requests the Court to award Plaintiff $25,000, which is the statutory maximum for Five Linx's removal of Oppenheimer's copyright management information.

### iv.     *Full Costs And Reasonable Attorney's Fees Are Appropriate*

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Five Linx's infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate.

Accordingly, Plaintiff requests the Court to award costs and attorney's fees in the amount of $3,110.00, consisting of fees in the amount of $2,670 and costs in the amount of $440. The amount and reasonableness of the costs and fees are established by the Declaration of Joel Rothman, submitted concurrently herewith.

    *v.*       ***Entry of A Permanent Injunction Is Appropriate***

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. *Arista Records*, 298 F. Supp. 2d at 1314 (entering permanent injunction against defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

As established by the well-pled facts of the Complaint [D.E. 1], and admitted by Five Linx's default, this Court has proper jurisdiction over this action. [D.E. 1, at ¶¶ 5-8]. Five Linx's conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law. [D.E. 1, at ¶¶ 37, 44]. For example, the ability of Five Linx to use Plaintiff's Work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the Work, as it dilutes its exposure and affiliates the image with Five Linx. [Oppenheimer Decl. ¶ 24]. Similarly, potential licensees of his copyrighted photographs will not want to pay his license fees if they see other commercial enterprises taking and using his photographs for their own commercial purposes without paying any fee at all. [Oppenheimer Decl. at ¶ 24].

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Five Linx, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Five Linx, prohibiting them from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell,

dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from either Plaintiff's copyrighted Work or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted Work.

### e. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendant Five Linx; award Plaintiff maximum statutory damages in the amount of $150,000 under 17 U.S.C. § 504 for defendant's copyright infringement; award Plaintiff maximum statutory damages in the amount of $25,000 under 17 U.S.C. § 1203 for defendants deletion of Plaintiff's copyright management information; full costs and attorney's fees, and prejudgment interest in the foregoing amounts; permanently enjoin Five Linx from infringing activities; and for any other relief the Court deem just and proper.  A proposed order is filed herewith.

Dated:  March 18, 2019                           Respectfully submitted,


                                              /s/ Joel B. Rothman
JOEL B. ROTHMAN
Florida Bar Number 98220
joel.rothman@sriplaw.com
ALEXANDER C. COHEN
Florida Bar Number 1002715
alex.cohen@sriplaw.com

**SRIPLAW**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

On the memorandum: Tamara L. Fitzgerald,
Edward C. Greenberg, LLC

*Counsel for Plaintiff David Gordon Oppenheimer*

## **CERTIFICATE OF SERVICE**

    The undersigned does hereby certify that on March 18, 2019, a true and correct copy of the foregoing document was sent via U.S. Mail, first class, to Five Linx, LLC at 400 Andrews Street 400, Rochester, New York, 14604.

    */s/ Joel B. Rothman*
    JOEL B. ROTHMAN