**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:  18-CV-81735-CIV-DIMITROULEAS**

DAVID GORDON OPPENHEIMER,

      Plaintiff,

v.

FIVE LINX, LLC,

      Defendant.

_____

**DECLARATION OF DAVID GORDON OPPENHEIMER IN SUPPORT OF MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**

I, David Gordon Oppenheimer state the following:

    1.    I am over the age of 18 and otherwise competent to testify.  I make the following statements based on personal knowledge.

    2.    I reside in the United States in North Carolina.  I am a professional photographer, and create photographs throughout the United States.  I am the owner of my photography company, Performance Impressions, LLC, which has a website of www.performanceimpressions.com.  My portfolio also includes concert, aerial, travel, and professional event photography.  My concert photography includes work featuring internationally recognized bands and performers including Furthur, Willie Nelson, Tom Petty and the Heartbreakers, Stevie Wonder, Steely Dan, The Police, Paul McCartney, The National, Lauryn Hill, Kings of Leon, Jay-Z, Eric Clapton, Dave Mathews Band, Bruce Springsteen and the E Street Band, and hundreds others.  I have shot the band Furthur—which is the band created in 2009 by Grateful Dead members Bob Weir and Phil Lesh.  Seeing them is the closest it gets in the modern day to seeing the original Grateful Dead.  My concert photography images are highly

sought after as I am routinely granted special access to concerts and other events throughout the United States.

3.      I created a photograph of the band Furthur performing at the Boardwalk Hall in Atlantic City, New Jersey on November 12, 2011, which is shown below and referred to herein as the "Work".



4.      I registered the Work with the Register of Copyrights on November 15, 2011 and was assigned the registration number VAu 1-084-329.  The Certificate of Registration is attached hereto as Exhibit 1.

5.      I own all rights, title, and interest, including copyrights, in and to the Work.

6.      Significant technical attributes were required to make the Work including; positioning myself and the camera angle in the optimal location to capture the band at the center

of the lens all the while simultaneously highlighting the architecture of the concert hall and the large attendance for the event; timing the movement of the lights perfectly to show both an upward intersection of light as well as a downward and outward disbursement of light; timing the changing colors of the light in order to display an image with balanced temperature and brightness; and using advanced photography techniques both in-camera and via post-production software to ensure a common brightness, contrast, clarity, color temperature, color saturation, color tonality, and image noise reduction.  Additionally, the Work was created using a digital camera system valued at several thousand dollars.

7. The Work is scarce not only due to its high quality and the technique applied, but because Furthur has only performed at Boardwalk Hall a small handful of times, and I was granted unique access to photograph them.

8. Additionally, Furthur does not hand out press passes to anyone, but rather carefully selected and vetted me to photograph them.  In 2011, which is when the Work was created, I was an officially credentialed photographer who toured with the band.  I was granted this highly unique opportunity via my direct contacts with the band's management.  I was credentialed to photograph the band from the front of the stage in the "pit" and elsewhere in the venue.  At one point during the performance, I traversed the arena to the far back top of the venue specifically to capture this photograph.

9. Additionally, Furthur, which was created by Grateful Dead members Bob Weir and Phil Lesh, performs music from the Grateful Dead.  Seeing them is the closest it gets in the modern day to seeing the legendary Grateful Dead.  It is a truly unique experience, that has been captured by me in a unique manner, the access of which has been granted to only a select few.

10.     It is my understanding that Five Linx, LLC ("Five Linx" or "5Linx") is a Florida based company, headquarted in Rochester, New York, that inter alia, markets and promotes bsuinesses, concerts and events.

11.     In or around 2014, Five Linx copied my Work without my permission and used it on Pinterest in its promotion of an event for its sole economic gain.

12.     Five Linx appears to have removed my copyright management information from the Work and replaced it with its own branding.  Specifically, my watermark "© 2011 David Oppenheimer Performance Impressions All Rights Reserved" was removed from the Work. Additonally, wherever I displayed the image on the Internet, I did so along my copryight management information clearly informing others that I own all rights to the Work. I further included metadata in the image with the copyright management information and expressly prohibiting use without a license.  The purpose of these multiple copyright notices is to protect my Work from being infringed..

13.     Additionally, Five Linx plastered the image with at least three instances of branding: the top left corner features Five Linx' logo and the words "5Linx International Event". The bottom center of the image features the words in large text "1DAY #5LINXAC".  Third, the bottom right corner of the image was covered with the text "Boardwalk Hall".  Neither the deletion of my watermark nor the addition of these three branding elements were authorized by me.

14.     The publication by Five Linx did not provide any photography credit to me. Evidence of Five Linx' infringement are attached as Exhibit 2.

15.     These uses of my Work were for Five Linx' sole economic benefit.  Although I have not been able to conduct discovery in this action since defendant has defaulted, it is my

understanding through my own due diligence that the image was published and has remained displayed displayed by Five Linx for a period of five years and counting.  As of the date of this writing, the infringed image is still online.  Screen captures showing that the infringed image is still being published on the Internet are annexed hereto at Exhibit 3.

16. Five Linx has never been licensed to use the Work for any purpose.

17. If I were to have entered into a license with Five Linx, prior to the infringement, permitting them 1) to display the Work on Pinterest to promote their event, 2) with my watermark removed; 3) without crediting me as the creator of the Work; and 4) to display same for a period of five years, I would have required a license fee in the amount of $9,200.

18. This licensing fee does not consider the scarcity of my Work, which is incredibly rare and was very difficult to create.

19. Furthur, which was created by members of the Grateful Dead in 2009, has not performed since 2014.  As such, photographs of their performances are quite limited. Indeed, they only performed at Boardwalk Hall in Atlantic City a handful of times.  Only a small number of photographers were vetted by the band to tour with them, and I moved from the "pit" where the other photographers were positioned and traveled to the far back center of the auditorium in order to capture this special shot.  The Work that is the subject of this action was precisely timed and created at the perfect moment with the optimal intersection of the lights illuminating the magic of the stage and the architecture of the auditorium.  What's more, the Work has been crafted with my professional technique to ensure the lighting, color balance, contrast, and other visual elements are optimal for the shot.  That exact moment and photograph are unique and scarce, and cannot be recreated.

20. Considering a scarcity multiplier of 5 to the licensing fee of $9,200, I believe my actual damages from the use of my Work to be $46,000; however, this number does not consider defendant's profits which I understand would be added to the actual damages if I were to elect same. Since defendant has defaulted, I have not been able to conduct discovery with regard to their profits for their use of my Work. However, according to the Inc. 5000 List, which is available at http://www.inc.com/inc5000/list/2014, Five Linx had a revenue of $112,400,000 in 2014. A screen capture showing Five Linx's presence on the Inc 5000 list and the reported revenue is annexed at Exhibit 4.

21. Although I am not lawyer, I understand that I may elect statutory damages instead of actual damages.

22. Five Linx knowingly and purposefully removed my copyright notice from my image. They had clear knowledge that I created the image, owned all rights to same, and that all rights were reserved by me. Notwithstanding this, they willfully removed same and then plastered the image with their various forms of branding. This is intentional deletion of my copyright management information. The fact that they took it a step further and prominently placed their logo, their hashtag, and their text all over my image compounds the harm. For these reasons, I believe that I should be entitled to the maximum statutory damages in the amount of $25,000 for the deletion of my copyright management information pursuant to 17 U.S.C. 1203.

23. Additionally, Five Linx' willful use of my image, with complete disregard for my intellectual property rights merits an award of enhanced statutory damages ranging from $30,000 to $150,000 for its infringement under 17 U.S.C. 501.

24. The ability of Five Linx to reproduce, modify, brand my image with their own logo and hashtag, and display copies of the copyrighted Work for their own commercial benefit

without compensation to me destroys the market value of the Work. Their use and exposure of my work as affiliated with their company for a period of five years dilutes its value.  I also cannot grant an exclusive license for this image to anyone as the image has already been published by Five Linx.  Additionally, the association of my image with Five Linx, which has been reported as being involved in a marketing scandal[1i] further harms the licensing potential of this image.  Commonly, before a license is granted for commercial use, all prior uses of that image must be disclosed.  Now, potential licensees of my Work will not pay the high licensing fees that my Work is worth because they will see that Five Linx used my Work for their own commercial purpose without paying any fee at all.

25. Additionally, the removal of my copyright management information from the Work makes it vulnerable to becoming infringed again and again and to becoming an orphan work.  This greatly dilutes the value of the Work and diminishes its licensing potential.

26. Given the above-calculated actual damages of $46,000 plus profits, if this were multiplied by three, the statutory damages would be $138,000.  These calculations do not even factor in the profits of defendant, which are unknown to us pre-discovery. As such, I believe that I am entitled to maximum statutory damages in the amount of $150,000.

27. For the above-referenced reasons, I believe I am entitled to the maximum statutory damages for copyright infringement in the amount of $150,000 and for the deletion of my copyright management information in the amount of $25,000.

I swear of affirm the foregoing is true and correct under penalties of perjury.

---

[1] The United States Attorneys Office for the Western District of New York reported in June and July of 2018 that former owners of 5Linx plead guilty to wire fraud and tax charges for their role in a multi-million dollar marketing scheme.  See.  https://www.justice.gov/usao-wdny/pr/second-former-5linx-owner-pleads-guilty-wire-fraud-and-tax-charge-his-role-multi and https://www.justice.gov/usao-wdny/pr/third-and-final-former-5linx-owner-pleads-guilty-wire-fraud-and-tax-charge-his-role.

DATED:  March 15, 2019

*David Oppenheimer*

David Gordon Oppenheimer
_____